**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AVA LAWREY and LAUREN TRIPP, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Civil Action No. 25-15624 (JXN)(JBC)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is United Airlines' ("United") motion to dismiss Plaintiffs Ava Lawrey ("Lawrey") and Lauren Tripp's ("Tripp") (collectively, "Plaintiffs") Amended Complaint under Federal Rules of Civil Procedure[1] 12(b)(1) and 12(b)(6). (ECF No. 42.) Plaintiffs opposed (ECF No. 44), and United replied (ECF No. 45). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, United's motion to dismiss is **GRANTED**.

# I. BACKGROUND

## A. Statement of Facts

### *i. The CBA*

United, "one of the largest airlines in the United States," employs over 1,000 flight attendants based out of Newark Airport, its "largest hub." (Am. Compl. ¶¶ 2, 32–33, ECF No. 12.) The Association of Flight Attendants—CWA ("Union"), a union, represents United flight

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

attendants. *See Emps. of United Air Lines/Cont'l Airlines Flight Attendants*, 38 NMB 247, 247–48 (June 30, 2011). In 2016, the Union entered a collective bargaining agreement ("CBA") with United lasting until 2021. (*See* United Ex. A ("CBA"), ECF No. 42-3.)

The CBA governs flight attendant pay and hours. (*See generally id.* §§ 4–6.) Though the CBA has dozens of provisions related to pay, the Court summarizes those relevant to this dispute. Under the CBA, flight attendants may work between seventy-one and ninety-five hours per month. (*See id.* §§ 4(C), 6(L)(1).) A flight attendant may work past the ninety-five-hour limit if they "pick up open flying," trade their trip with another flight attendant, or "accept a reassignment." (*Id.* § 6(L)(2).)

Flight attendants earn a base pay rate of between $26.68 to $67.11 per hour of "flight time." (*Id.* § 4(A).) Flight time can be "actual" or "credited." (*Id.* § 2(P).) Actual flight time means "the time from the moment an aircraft moves from the blocks under its own power or under tow for the purpose of flight, until the time the aircraft comes to rest at an unloading point." (*Id.*) Credited flight time means "the time which is accumulated toward a Flight Attendant's monthly credited flight time maximum." (*Id.*) "Credited flight time may be more than but cannot be less than actual flight time." (*Id.*) "All flight time for pay purposes shall be computed as actual time or time published on trip pairings, whichever is greater." (*Id.* § 4(D).) Moreover, an attendant's actual or scheduled flight time "whichever is greater," is "recorded cumulatively on a stop-to-stop basis." (*Id.* § 6(C).)

The CBA has four different formulas to calculate a flight attendant's overall pay. (*See id.* §§ 6(A)–(B).) A flight attendant is paid based on whichever formula yields the most money. (*See generally id.*) Those formulas are: (1) a "minimum of one (1) hour's flight time pay and credit for each two (2) hours of duty time, prorated," (*id.* § 6(A)(1)); (2) a "minimum of five (5) hours flight

time pay and credit for a one duty period pairing,"[2] (*id.* § 6(A)(2)); (3) a "minimum average pay and credit of five (5) hours per day for pairings with multiple duty periods," (*id.* § 6(A)(3)); and (4) "a minimum of one (1) hour's pay and flight time credit for each three and one half (3 1/2) hours elapsed time" from the time when a flight attendant reports or is scheduled to report for duty until they return to their assigned airport and are released from duty, (*id.* § 6(B)).

A flight attendant is "on duty" from "the time she/he is required to and reports for duty to a place designated by [United] for the purpose of flying, deadheading to or from a flight assignment, or Standby Reserve"[3] until debriefing at "a layover point" or the flight attendant's assigned airport. (*Id.* § 2(Y).) Flight attendants must "check-in" at the airport between forty-five and seventy-five minutes before their flight. (*Id.* § 6(R)(2).) Flight attendants are released from duty fifteen minutes "after block-in of a flight at the end of a Flight Attendant's duty period." (*Id.* § 6(R)(9).)

Flight attendant duties include "from the time the aircraft door is closed until the time the aircraft door is opened, maintaining the tidiness and neatness of the aircraft cabins, galleys and lavatories, and restocking the lavatory supplies." (*Id.* § 3(Y).) Flight attendants "receive one-half (1/2) credit for pay purposes, including premium pay and language pay when applicable, on an actual minute basis for all holding time, in excess of thirty (30) minutes beyond scheduled ground time or block arrival time." (*Id.* § 6(N)(1).) Flight attendants earn "holding pay in addition to all other compensation." (*Id.*) Under the CBA, United may require a flight attendant "to remain on board after the block arrival of the flight." (*Id.* § 6(N)(2).) "If this occurs at a point where she/he

---

[2] "Pairing" means "any combination" of flights that leaves from and eventually returns to the flight attendant's assigned airport. (*Id.* § 2(BB).)

[3] "Deadheading" means "the transport of a Flight Attendant for the purpose of covering or returning from a flight assignment." (*Id.* § 2(E).) "A Flight Attendant deadheading shall be considered on duty." (*Id.* § 3(I)(6).)

is scheduled to go off duty, the duty period will either end at the time released from holding or according to the time set forth in [the CBA].” (*Id.*) “The maximum holding time for a Flight Attendant shall be limited to four (4) hours at any one point or a total of five (5) hours during any on-duty period.” (*Id.* § 6(N)(3).)

The CBA requires United to pay flight attendants twice per month. (*Id.* § 3(BB)(1).) The first paycheck advances 70% of the flight attendant’s monthly base pay (i.e., seventy-one hours). (*Id.* § 3(BB)(2).) The second paycheck is for the flight attendant’s actual total monthly earnings, minus the amount of the first paycheck. (*Id.* § 3(BB)(3).) United provides flight attendants with a written statement of their wages and deductions from their pay stubs. (*Id.* § 3(BB)(5).)

The CBA also sets forth a procedure for resolving disputes between United and flight attendants. (*See id.* § 23.) The first step is filing a grievance with the Union. (*Id.* § 23(C)(1).) If the grievance is not resolved after a hearing and appeal, the matter may be referred to binding arbitration before to the System Board of Adjustment (“System Board”). (*Id.* § 24(A).) In accordance with the Railway Labor Act (“RLA”), 45 U.S.C. § 151, *et seq.*, the System Board has “jurisdiction over disputes” between flight attendants and United “growing out of grievances or out of interpretation or application of any of the terms of” the CBA. (*Id.* § 24(C).)

***ii. Lawrey and Tripp***

Lawrey, a New Jersey resident, was a United flight attendant from 2023 to 2025. (Am. Compl. ¶ 10.) Her base pay was $30 per hour. (*Id.* ¶ 10.) Tripp, a Texas resident, has been a United flight attendant since 2018. (*Id.* ¶ 21.) Her base pay is $67.11 per hour. (*Id.* ¶ 21.) Both Plaintiffs primarily worked out of Newark Airport. (*Id.* ¶¶ 10, 21.)

As flight attendants, Plaintiffs were tasked with

> compliance with aviation safety regulations; ensuring passenger safety, including during the boarding and deplaning process, as well as during flights; providing

> customer service, including during the boarding and deplaning process, as well as during flights; providing blankets, pillows, and ear phones to passengers; cleaning and collecting trash on the plane; collaborating with the cockpit regarding flight status; conducting safety checks; demonstrating emergency procedures; serving meals and beverages; assisting passengers with special needs; and ensuring passenger comfort, including during the boarding and deplaning process, as well as during flights.

(*Id.* ¶¶ 11, 22.)

Lawrey regularly arrived at Newark Airport at least an hour (and often, an hour and a half) before her first flight's scheduled departure time to "go through security, check in at her gate, and undergo the pre-flight meeting with the crew." (*Id.* ¶ 16.) Tripp alleges United requires her to arrive at Newark Airport "at least one hour prior to her first flight of the day for domestic flights and one hour and fifteen minutes prior to any international flights." (*Id.* ¶ 26.) Nevertheless, Tripp typically arrives at Newark Airport an hour and a half early to "to go through security, check in at her gate, and undergo the pre-flight meeting with the crew." (*Id.*) Though flight attendants earn "per diem wages for this pre-flight wait time at the rate of $2.50 per hour," Plaintiffs claim United does not pay flight attendants at their regular hourly rates "until the pilot released the airplane's brake prior to departure." (*Id.* ¶¶ 16, 26.)

After a plane arrived at its destination, Plaintiffs claim they "assisted customers with de-boarding, but [were] not paid for this additional time." (*Id.* ¶¶ 17, 27.) Nor were Plaintiffs "paid for the additional time [they] spent deplaning [themselves] and walking to [their] means of transportation to leave the airport." (*Id.*) Plaintiffs claim they frequently worked shifts where they would arrive at a destination and "wait for hours before boarding another plane." (*Id.* ¶¶ 18, 28.) During the wait, Plaintiffs were "in uniform, could not leave the facility, and [were] required to assist customers with any inquiries they may have." (*Id.*) Plaintiffs allege they were not paid for any work done during the wait periods. (*Id.*)

Lawrey estimates she worked approximately twelve hours per shift, which she alleges included two to four hours of uncompensated pre-flight, post-flight, and wait-time work per shift. (*Id.* ¶ 14.) Tripp estimates she works approximately ninety shifts per month, which she claims included approximately twenty hours of uncompensated pre-flight, post-flight, and wait-time work per shift. (*Id.* ¶ 25.)

Plaintiffs allege United "systematically failed and refused to compensate Plaintiffs and Flight Attendants for all hours worked." (*Id.* ¶ 34.) According to Plaintiffs, United only pays flight attendants "for 'actual' flight time, which is defined as the time from when the pilot releases the aircraft's brakes to the time when the brakes are set at the arriving destination at the conclusion of the flight." (*Id.* ¶ 35.) Thus, Plaintiffs claim United does not pay flight attendants for the time they spend getting to the airport early, waiting at the gate, going to pre-flight staff meetings, checking equipment, boarding passengers, providing pre-flight customer service, helping passengers exit the plane, going through security, and waiting during layovers. (*Id.* ¶ 36.)

**B. Procedural History**

Plaintiffs filed this putative class action lawsuit on behalf of themselves and all similarly situated flight attendants on September 15, 2025 (*See* Compl., ECF No. 1), which they later amended. (*See* Am. Compl).

The Amended Complaint alleges that (1) because United only compensated flight attendants for "actual flight time," United did not pay Plaintiffs for all hours worked, including at the applicable minimum wage, in violation of N.J.S.A. 34:11-56a, *et seq.*, and N.J.A.C. 12:56-5.1 to -5.8 ("Count I"); (2) due to United's "actual flight time" policy, United did not pay Plaintiffs overtime, in violation of N.J.S.A. 34:11-56a, *et seq.*, and N.J.A.C. 12:56-6.1 to -6.7 ("Count II"); (3) United's wage statements failed to include information required by N.J.S.A. 34:11-4.6 ("Count

III"); and (4) because United paid a flight advance, followed by the remainder of the month's wages, United did not pay wages "within ten working days after the end of the pay period," in violation of the New Jersey Wage Payment Law ("WPL"), N.J.S.A. 34:11-4.2 ("Count IV"). (*See id.* ¶¶ 67–100.)

United moved to dismiss Counts I, II, and IV under Rules 12(b)(1) and 12(b)(6). (*See* United Mot. to Dismiss, ECF No. 42.) United argues the RLA deprives federal courts of jurisdiction over cases involving the interpretation or application of a CBA. (*See* United Moving Br. at 14–16, ECF No. 42-1.) Instead, the RLA requires those disputes to go to arbitration before United's System Board. (*Id.*) In United's telling, the Court cannot resolve Counts I, II, and IV without interpreting and/or applying the CBA. (*Id.* at 16–28.) Thus, according to United, the Court lacks jurisdiction over Counts I, II, and IV; they must go to the System Board. (*Id.*) In the alternative, United argues Plaintiffs fail to state unpaid wage or overtime claims. (*Id.* at 28–33.) Plaintiffs opposed, arguing Counts I, II, and IV do not require the Court to interpret or apply the CBA. (*See* Pls.' Opp'n, ECF No. 44.) United replied. (*See* United Reply, ECF No. 45.)

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Rule 12(b)(1) enables a party to move to dismiss a complaint for lack of subject matter jurisdiction. "When jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff bears the burden of persuading the court that subject matter jurisdiction exists." *N.J. Conservation Found. v. FERC*, 353 F. Supp. 3d 289, 294–95 (D.N.J. 2018).

A party can facially or factually attack subject matter jurisdiction. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial challenge asserts the complaint, taken as true, "is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not

present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). "A court ruling on a facial attack considers only the complaint, viewing it in the light most favorable to the plaintiff." *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 320 (3d Cir. 2018).

"A factual attack, on the other hand, is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358. "So, for example, while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking." *Id.* "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

**B. Rule 12(b)(6)**

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court conducts a three-step inquiry to evaluate a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)

(quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). The Court disregards, however, "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis*, 824 F.3d at 341. Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

### A. The RLA Preempts Counts I, II, and IV

Congress enacted the RLA "to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 252 (1994). The RLA "establishes a mandatory arbitral mechanism" for "major" and "minor" disputes. *Id.* Major disputes relate to "the formation of [CBAs] or efforts to secure them." *Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302 (1989). Plaintiffs do not challenge the formation of or efforts to secure their CBA. So, this is not a major dispute.

Under the RLA, parties to a "minor dispute *must* arbitrate their dispute before an adjustment board established by the employer and the unions representing the employees." *Kennedy v. Am. Airlines Inc.*, 195 F. Supp. 3d 646, 654 (D.N.J. 2016). The RLA vests the adjustment board "with *exclusive* jurisdiction over" minor disputes. *Id.* Accordingly, "federal courts generally do not have jurisdiction over 'minor' disputes." *Nachtsheim v. Cont'l Airlines*, 111 F. App'x 113, 116 (3d Cir. 2004).

Minor disputes arise from "the interpretation or application of" an existing CBA. *Norris*, 512 U.S. at 256. The CBA "must be more than 'relevant' to a plaintiff's claim." *Stouffer v. Union R.R. Co., LLC*, 85 F.4th 139, 144 (3d Cir. 2023) (citation omitted). "The 'distinguishing feature' of a minor dispute is that it 'may be conclusively resolved by interpreting the existing agreement.'"

*Id.* (citation omitted). "Merely considering the terms of a collective-bargaining agreement—looking to undisputed terms in a CBA or interpreting a CBA solely to compute damages, for example—does not warrant preemption." *Oddo v. Bimbo Bakeries USA, Inc.*, No. 16-4267, 2017 WL 2172440, at *5 (D.N.J. May 17, 2017). And "purely factual questions" about an employee or employer's conduct or motives "do not require a court to interpret any term of a [CBA]." *Stouffer*, 85 F.4th at 144–45. But the RLA preempts claims that are "inextricably intertwined with consideration of the terms of" a CBA. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

***i. Counts I (Unpaid Wages) and II (Unpaid Overtime)***

Under New Jersey law, employees "shall be paid for all hours worked." N.J.A.C. 12:56-5.1. "All the time the employee is required to be at his or her place of work or on duty shall be counted as hours worked." N.J.A.C. 12:56-5.2(a). An employee is "on duty" when he or she "is unable to use the time effectively for his [or her] own purposes." *Sec'y U.S. Dep't of Labor v. Nursing Home Care Mgmt. Inc.*, 128 F.4th 146, 156 (3d Cir. 2025) (citation omitted). A place of work is any place where: "(1) an activity is performed that is controlled or required by the employer; and (2) such activity serves to primarily benefit the employer." *Vaccaro v. Amazon.com.dedc, LLC*, No. 18-11852, 2020 WL 3496973, at *4 (D.N.J. June 29, 2020). And, with some exceptions not relevant here,[4] "[a]n employer shall also pay each employee not less than [one-and-a-half] times such employee's regular hourly rate for each hour of working time in excess of [forty] hours in any week." N.J.S.A. 34:11-56a4(b)(1).

[4] New Jersey's overtime law does not apply to: "any individual employed in a bona fide executive, administrative, or professional capacity"; "employees engaged to labor on a farm or employed in a hotel"; "an employee of a common carrier of passengers by motor bus"; "a limousine driver who is an employee of an employer engaged in the business of operating limousines"; or "employees engaged in labor relative to the raising or care of livestock." N.J.S.A. 34:11-56a4(b)(1).

Plaintiffs assert that United only compensates flight attendants for "actual" flight time. (*See* Am. Compl. ¶ 72.) According to Plaintiffs, because flight attendants do work beyond the actual flight itself (i.e., arriving at the airport, going through security, helping passengers board and deplane, and serving customers in between connecting flights), United does not pay flight attendants for all hours worked. And, because flight attendants work more than forty hours per week, Plaintiffs argue United does not pay flight attendants required overtime.

United argues the RLA preempts Counts I and II because, to resolve this dispute, the Court must interpret and apply the CBA's wage, compensation, and duty provisions. The Court agrees.

As discussed above, the CBA pays flight attendants based on one of four combinations of actual flight time, credited flight time, duty time, pairings with one or multiple duty periods, and elapsed time. (CBA §§ 6(A)–(B).) A flight attendant is required to check in for a flight between forty-five and seventy-five minutes before a flight departs; they are released from duty fifteen minutes after their flight arrives. (*Id.* §§ 6(R)(2), (R)(9).) Flight attendants receive credit for delays in departure and arrival. (*Id.* § 6(N).) Accordingly, to find whether United paid flight attendants for all hours worked (and for overtime at the appropriate rate), the Court must (1) determine an attendant's actual flight time; (2) figure out the attendant's credited flight time; (3) calculate the attendant's duty period for a given flight; (4) input the attendant's actual flight time, credited flight time, and duty period into the CBA's four methods for calculating pay; (5) use the formula yielding the highest amount of pay; (6) interpret the CBA to ascertain the amount of time a flight attendant was required to be on duty or at their place of work; and (7) compare the amount of pay under the CBA's formulas to the number of hours where United required a flight attendant to work or be at their place of work.

In other words, the Court must interpret and apply the CBA "for the baseline determination of whether [Plaintiffs] were paid according to structures that accounted for the activities for which they now argue they are owed wages." *John v. Am. Airlines Inc.*, No. 25-6698, 2026 WL 1644075, at *4 (E.D. Pa. June 5, 2026). "This is precisely the kind of interpretation that the Court is barred from undertaking under the RLA." *Id.* As Counts I and II are "inextricably intertwined with consideration of the" CBA, *Allis-Chalmers*, 471 U.S. at 213, the RLA preempts both causes of action.[5] Therefore, Counts I (unpaid wages) and II (unpaid overtime) of the Amended Complaint are **DISMISSED** ***with prejudice***.[6]

[5] Plaintiffs assert that courts around the country have rejected United's precise RLA preemption argument. (*See* Pls.' Opp'n at 15–16.) Not so. Those cases analyzed discrimination, medical leave, and wage statement laws, not wage and overtime payment laws. *See Palova v. United Airlines, Inc.*, 161 F.4th 350, 352 (5th Cir. 2025) (age discrimination); *Bendetsen v. United Airlines, Inc.*, No. 23-1553, 2025 WL 942963, at *6 (D.N.J. Mar. 26, 2025) (same); *Ward v. United Airlines, Inc.*, 986 F.3d 1234, 1237 (9th Cir. 2021) (wage statement); *Saridakis v. United Airlines*, 166 F.3d 1272, 1274 (9th Cir. 1999) (disability discrimination); *Kovacic-Engelking v. Alaska Airlines, Inc.*, No. 17-8147, 2018 WL 6164743, at *1 (C.D. Cal. Jan. 18, 2018) (same); *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 914 (9th Cir. 2018) (medical leave).

Plaintiffs also rely on *Mack v. Six Flags Great Adventure, LLC* for the proposition that courts within this District have rejected similar preemption arguments in the context of preemption under § 301 of the Labor Management Relations Act ("LMRA"). (Pls.' Opp'n at 19–22.) LMRA § 301 and RLA preemption analyses use a "virtually identical" standard. *Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 375 (3d Cir. 1999) (quoting *Norris*, 512 U.S. at 260).

But *Mack* does not compel a different conclusion. In *Mack*, the plaintiffs sought "unpaid wages for activities occurring before clocking in and after clocking out of their shifts." No. 23-3813, 2024 WL 69879, at *6 (D.N.J. Jan. 5, 2024). Their CBA plainly did not address this issue. *Id.* at *5–6. At most, the defendant identified CBA provisions governing employee meal breaks and minimum work hours. *Id.* But, because the plaintiffs in *Mack* did not "seek unpaid wages for employee *meal breaks*" and the minimum work hours provision was relevant solely for "establishing damages," the Court sensibly concluded that it did not need to interpret the CBA to resolve that case. *Id.* at *6.

Here, by contrast, the CBA directly addresses when flight attendants are on- or off-duty, sets forth a compensation scheme based on actual flight hours and credited hours, and provides four formulas for calculating flight attendant pay. Simply put, before the Court can even determine whether United paid flight attendants for all hours worked, it must interpret and apply the CBA.

[6] *See Hamarneh v. United Airlines*, No. 24-5962, 2025 WL 957421, at *4 (D.N.J. Mar. 31, 2025) (dismissing with prejudice claims preempted by RLA).

### *ii. Count IV (WPL)*

Under the WPL, "every employer shall pay the full amount of wages due to his employees at least twice during each calendar month," with the end of the pay period occurring "not more than [ten] working days before such regular payday." N.J.S.A. 34:11-4.2

As discussed above, United pays flight attendants twice per month. (CBA § 3(BB)(1).) In the first paycheck, United advances a flight attendant 70% of their base pay for seventy-one hours worked. (*Id.* § 3(BB)(2).) In the second paycheck, United pays the flight attendant their actual total monthly earnings, minus the amount of the first paycheck. (*Id.* § 3(BB)(3).) Plaintiffs assert United violated the WPL because (1) United's pay schedules "underpay Flight Attendants for work performed during the first half of the month then allegedly attempt to pay all wages in the second half of the month for actual labor performed during both halves of the month," (Am. Compl. ¶ 97); and (2) United does not pay flight attendants earned wages "within ten days of the end of their pay period," (*id.* ¶ 98).

United argues the RLA preempts Count IV because the Court may only determine "when wages are earned, and thus due, to flight attendants . . . by interpreting the myriad duty and payment provisions of the CBA." (United Moving Br. at 25.) The Court agrees.

"Minor disputes include disputes about the existence or extent of provisions established or implied into the agreement by usage, practice or custom." *United Transp. Union v. Conemaugh & Black Lick R.R. Co.*, 894 F.2d 623, 628 (3d Cir. 1990). Therefore, "arbitration is required if either side is advancing a plausible argument based on implied terms evidenced by course and practice under the [CBA]." *Capraro v. United Parcel Serv. Co.*, 993 F.2d 328, 332 (3d Cir. 1993). And, under the WPL, an employer may make an agreement with an employee "to pay wages in advance." N.J.S.A. 34:11-4.7.

According to United, the agreement to pay flight attendants' wages in advance is at least implied. The CBA uses a bid system to set flight assignments. (*See* CBA § 7(B).) Flight attendants can "bid" for assignments for each upcoming month. (*Id.*) After receiving assignments, flight attendants can trade trips with each other. (*Id.* § 7(I)–(P).) United claims that, because flight attendants can swap flights at the last minute, "and because wages cannot be calculated until United can determine which of its four pay formulae . . . apply to each duty period and what the product of that formula is, United cannot determine all the wages due each of its flight attendants until the end of each bid month." (United Moving Br. at 26.) So, in United's telling, it advances 70% of a flight attendant's base pay at the beginning of the month to "ensure all flight attendants are properly paid." (*Id.*) In short, while Plaintiffs claim United underpays flight attendants in their first paycheck each month, United counters that the CBA contains at least an implied agreement to advance wages to flight attendants, which the WPL allows. Therefore, Count IV involves "a plausible argument based on implied terms evidenced by course and practice under the [CBA]." *Capraro*, 993 F.2d at 332. And resolving this dispute would require the Court to interpret and apply the CBA. But that is a job for the System Board, not the Court. Accordingly, Count IV (WPL) is **DISMISSED** ***with prejudice***.

### B. The Court Orders Jurisdictional Discovery on Count III

United moved only to dismiss Counts I, II, and IV, as preempted by the RLA. (*See* United Moving Br.) That leaves Count III, which asserts that United violated New Jersey's wage statement law, N.J.S.A. § 34:11-4.6. (*See* Am. Compl. ¶¶ 83–93.) In its moving brief, United states that: "Unlike the other counts, it does not appear that resolving Count III regarding alleged deficiencies in United's wage statements will require interpretation or application of the CBA. Discovery,

however, could reveal that it does. If so, United will move on Count III at that time." (United Moving Br. at 15 n.6.)

The Court need not wait to determine if it has the power to decide Count III. Courts have "wide discretion in resolving jurisdictional factual disputes." *Wright v. N.J./Dep't of Educ.*, 115 F. Supp. 3d 490, 497 (D.N.J. 2015). Correspondingly, "[d]istrict courts have the authority to allow discovery in order to determine whether subject-matter jurisdiction exists." *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 (3d Cir. 2015). The RLA deprives the Court of jurisdiction to hear minor disputes. *Nachtsheim*, 111 F. App'x at 116. For the sake of judicial economy, efficient docket management, and the Court's "independent obligation to determine whether subject-matter jurisdiction exists," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), the Court must consider whether the RLA preempts Count III before this matter can proceed further.

Accordingly, the parties shall engage in jurisdictional discovery limited to the issue of whether the RLA preempts Count III. Following jurisdictional discovery, the parties shall brief (1) whether the Court has subject matter jurisdiction over Count III; and (2) if so, whether the Court should stay Count III pending System Board arbitration of Counts I, II, and IV. Pursuant to 28 U.S.C. § 636(b)(1)(B), Rule 72, and Local Civil Rule 72.1(a)(2), this matter is hereby referred to Magistrate Judge Clark to preside over such proceedings.

## IV. CONCLUSION

For the reasons stated above, United's motion to dismiss Counts I, II, and IV is **GRANTED**. Counts I, II, and IV of the Amended Complaint are **DISMISSED *with prejudice***. The parties shall engage in jurisdictional discovery limited to whether the RLA preempts Count III. The matter is referred to Magistrate Judge Clark to preside over such proceedings. An appropriate Order accompanies this Opinion.

**DATE: 8/18/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**